# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORIS COY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-1372 |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Schwab, J.

### I.      Introduction

Plaintiff Doris Coy ("Coy" or "plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings.  (Doc. Nos. 12 & 14).

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the evidence contained in the record, the Court finds that the decision of the Commissioner is "supported by substantial evidence" within the meaning of § 405(g).  Therefore, the Court will deny plaintiff's motion for summary judgment and grant the defendant's motion for summary judgment.  The ALJ's decision will be affirmed, and the Court will enter an order directing that this case be closed.

### II.      Procedural History

Plaintiff protectively filed an application for DIB and for SSI on June 28, 2006, alleging

disability as of August 20, 2005, resulting from chronic pain, neuropathy, bladder tumor, memory loss, and lack of mobility in her back. (R. 40-44, 54, 348-53). Plaintiff's claims were denied on initial review, and plaintiff requested a hearing. (R. 30-31, 32-33). A hearing was held before an Administrative Law Judge ("ALJ") on July 9, 2007, during which claimant was represented by counsel and appeared and testified. (R. 362-87). An impartial vocational expert ("VE") was also present and gave testimony. *Id.* By decision dated July 20, 2007, the ALJ denied plaintiff's claims. (R.10-23).

On July 20, 2007, the ALJ issued an unfavorable decision regarding plaintiff's claims, finding that plaintiff was able to perform a range of sedentary work and that jobs suitable for plaintiff, considering her impairments, existed in the national economy.[1] (R. 10-23). The ALJ concluded, therefore, that plaintiff was not disabled under the Act.[2] *Id.*

On September 5, 2008, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 5-7). Plaintiff subsequently commenced this action against the Commissioner, seeking judicial review of the Commissioner's decision. Plaintiff and the Commissioner filed cross-motions for summary judgment (Doc. Nos. 12 & 14) which are the subject of this memorandum opinion.

### III. Statement of the Case

In his decision, the ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2007[3].

---

[1]For purposes of the Act, work "exists in the national economy" if it "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "The ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

[2]An individual is considered to be "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A)(using almost identical language).

[3]As such, plaintiff must be found disabled as defined by the Act on or before this date in order to receive DIB. This date has no bearing on her eligibility for SSI benefits.

2.    The claimant has not engaged in substantial gainful activity since August 20, 2005, the alleged onset date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: Degenerative disc disease of the lumbar spine with scoliosis, spondylolysis and lumbar facet syndrome, peripheral neuropathy, history of an old T12 compression fracture, headaches, chronic obstructive pulmonary disease and asthma, residuals of Grade II transitional cell bladder carcinoma, bipolar II disorder, depression, generalized anxiety disorder, panic disorder without agoraphobia and anxiety (20 C.F.R. 404.1520(c) and 416.920(c).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except she is limited to occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs, must avoid climbing ladders, ropes and scaffolds, must be afforded the option to sit and stand for one to two minutes every hour or so during the work day, must avoid pushing and pulling with the right lower extremity to include the operation of pedals, must avoid concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, cold temperature extremes, extreme dampness and humidity, is limited to occupations which do not require exposure to dangerous machinery and unprotected heights, is limited to occupations which can be performed wearing an incontinence protection pad, is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions and, in general, relatively few work place changes with no more than occasional interaction with co-workers, supervisors and the general public.

6.    The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.    The claimant was born on January 23, 1968, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 20, 2005 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 15-23).

## IV.      Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[4] and 1383(c)(3)[5]. Section 405(g) permits a District Court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the

---

[4] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the District Court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
        42 U.S.C. § 405(g).

[5] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
        42 U.S.C. § 1383(c)(3).

4

standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The District Court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a Court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the District Court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the District Court considers and reviews only those findings

upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to

preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[6] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical

---

[6]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be

considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . .”). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions.  Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected.  *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984);  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).  He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence.  *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993);  *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834

F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green*, 749 F.2d at 1070-71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision

upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly

accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing Court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[7] Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

---

[7]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

14

to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[8] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about

---

[8]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V.    Discussion

Plaintiff asserts that the ALJ improperly dismissed the opinion of Russell Drozdiak, M.D. ("Dr. Drozdiak"), her long-time treating primary care physician, that she was disabled, specifically noting that she was unable to sustain 8 hours of work activity per day because she required frequent breaks throughout the day and would frequently be absent as a result of her severe pain.  Plaintiff suggests that the ALJ's basis for rejecting Dr. Drozdiak's opinion was a misleading portrayal of the facts.

Plaintiff's entire argument on this point is based upon a "Physical Capacity Evaluation" form submitted by plaintiff's counsel and completed by Dr. Drozdiak on June 11, 2007.  The form itself is a sort of questionnaire in which the doctor's opinion as to the claimant's physical capacity is expressed by checking off answers to various questions with space provided to list diagnoses and clinical findings supporting the checked-off answers.  Dr. Drozdiak checked the answer denoting the most extreme limitation for every question on the form.  His diagnoses were peripheral neuropathy, COPD, bipolar disorder, herniated lumbar discs, and spondylosis.  His "clinical findings" supporting his answers are as follows:

| | |
|---|---|
| Neuropathy: | Though nerve conduction studies are normal, her neurologist believes she has neuropathy.  Pt is having some improvement with treatment for this. |
| Bipolar Disorder: | This makes it difficult for her to focus.  Mood is affected.  Psychiatrist is still adjusting medications. |

| COPD: | She is short of breath with exertion.  Still smokes 2 packs per day. |
| --- | --- |
| Spondylosis: | Severe low back pain. |

(R. 330).

The ALJ discounts this opinion because he found that the extreme limitations indicated on the form were inconsistent with the other evidence in the record and lacked supporting analysis.  Plaintiff argues this was error because Dr. Drozdiak's opinion, as her treating physician, was entitled to substantial weight.  While it is true that "[u]nder applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight," *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)), an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 486 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).  Additionally, plaintiff fails to recognize that these types of check-the-box reports, even when completed by a primary care physician, are entitled to less evidentiary weight than other substantive medical evidence.  "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  Furthermore, a treating physician's opinion that a claimant is "disabled" or "unable to work" is not dispositive or entitled to special deference. See *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); 20 CFR §§ 404.1527(e), 416.927(e).  Disability determinations are the province of the ALJ. 20 CFR § 404.1527(d)(2), 416.927(d)(2).

Plaintiff further argues that the ALJ's rejection of Dr. Drozdiak's opinion was premised upon a mischaracterization of the other medical evidence contained in the record.  Plaintiff avers that the ALJ took the medical findings of plaintiff's other physicians out of context to support his rejection of the form completed by Dr. Drozdiak.  For example, plaintiff contends that the ALJ relied on MRI findings by Jagadeesha Shetty, M.D. ("Dr. Shetty") relating to her arm and leg numbness and urinary incontinence to support a finding that plaintiff did not experience significant back pain.  Dr. Shetty's report to which plaintiff refers states, "This patient's symptoms are not correlating with her MRI findings.  She is having numbness involving her both

upper and lower extremities and also incontinence, which cannot be explained from our present MRI scan." The reference to the plaintiff's numbness and incontinence does not negate that the findings also related to her back pain. Indeed, the chief complaint listed on the report is "low back pain." All of the symptoms are discussed in the history of present illness section and the physical examination and clinical impression sections focus solely on plaintiff's back problems. Thus, the ALJ's reference to Dr. Shetty's report was not out of context.

Plaintiff next addresses the ALJ's observation that plaintiff did not have follow- up treatment with Kenneth Noel, M.D. ("Dr. Noel") after medial branch blocks at L3 to S1 were performed on plaintiff. Plaintiff points out that she was diagnosed with bladder cancer during this time and continued treatment with other doctors. The Court finds that the ALJ's comment regarding lack of follow-up with Dr. Noel does not merit discussion because it does not appear that the accident of that circumstance played any part in informing the decision. The decision merely states, "Diagnoses included lumbar facet syndrome, greater on the left, left sacroiliac joint dysfunction, left cervical facet syndrome and lumbar degenerative disc disease, for which medial branch blocks to the left at L3 to S1 were performed on February 17, 2006, but there is no evidence of follow-up."

Next, plaintiff claims that the ALJ minimized the findings of Beverly Roberts-Atwater, Ph.D., D.O. ("Dr. Roberts-Atwater") because he noted a comment that "Baclofen provided pain relief . . ." written by Dr. Roberts-Atwater in December 2006 but does not account for the fact that in March 2007, plaintiff stated the Baclofen was no longer working and that Dr. Roberts-Atwater increased the dosage, which plaintiff suggests was "plainly an indication that the Baclofen was not 'providing pain relief.'" In the subjective section of the report to which plaintiff refers, it does state "However, the baclofen she states does not work." In the plan section, Dr. Roberts-Atwater states she will increase the dose and notes that plaintiff "has had increased stressor with decreased sleep that also could precipitate this as well." None of this convinces the Court, however, that the ALJ's statement "Additionally, Baclofen provided pain relief and subsequent treatment notes reflected no more than mild paraspinal tenderness in the lumbar spine," is in some way misleading so as to constitute error. This is particularly so because the December 2006 does state that the Baclofen was working and the March 2007 report is the last

report in the record by Dr. Roberts-Atwater, so there are no "subsequent treatment notes" after plaintiff indicated the Baclofen was no longer working.

Dr. Drozdiak's own treatment notes reveal conservative treatment of plaintiff's complaints with medication, and no reference to the extreme physical limitations he assessed on the form are found anywhere in the evidence he supplied to the record.

More importantly, none of these finely nuanced arguments persuades the Court that the ALJ's rejection of Dr. Drozdiak's "Physical Capacity Evaluation" form was error or not supported by substantial evidence. Notably, however, while arguing that the ALJ erred in rejecting this evidence, plaintiff points to no objective support in the record to invalidate the ALJ's reason for rejecting it.

Plaintiff next argues that the ALJ's credibility determination is not supported by substantial evidence. The ALJ found that plaintiff's subjective reports of the intensity, duration and limitations of her impairments were not entirely credible. An ALJ is not required to give considerable weight to subjective complaints that are not supported by medical evidence. See *Schaudeck v. Comm's of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ evaluated plaintiff's self-reported daily activities as being in contradistinction to plaintiff's claim of total disability. These daily activities included cooking, driving, dusting, filling the dishwasher, washing laundry with assistance, shopping and carrying light grocery bags, watching television, accessing the internet for medical information, eating out at restaurants, and visiting with her mother. The ALJ also noted that plaintiff initially reported that she stopped working because she "was laid-off" and not because of any health-related issues. The ALJ gave further consideration to the opinion evidence from consultative examiners that concluded plaintiff's exertional RFC determined plaintiff was capable of performing light work activity and that plaintiff was able to meet the basic mental demands of competitive work on a sustained basis. The Court finds that the ALJ's credibility determination is based upon substantial evidence and not unreasonable in light of these findings. Moreover, the ALJ has authority to make credibility determinations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983). "Because he had the opportunity observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90. (4th Cir.

1984).  The ALJ's credibility determinations need only be supported by substantial evidence on the record.  Such determinations are entitled to deference. *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003).  The Court finds no error as to the ALJ's credibility determination with respect to plaintiff.

Lastly, plaintiff avers that the ALJ failed to give a detailed "function-by-function" assessment of plaintiff's RFC.  Specifically, plaintiff maintains that the ALJ's failure to address the Global Assessment of Functioning ("GAF")[9] scores of 45-50 assigned to plaintiff by Karthi Namasivayam, M.D. ("Dr. Namasivayam"), her treating psychiatrist, resulted in an inaccurate hypothetical question to the VE and constitutes reversible error.

Initially, the court notes that the Social Security Administration has explicitly declined to endorse the use of the GAF scale because its scores do not have a direct correlation to the disability requirements and standards of the Act. *See* 65 Fed.Reg. 50746, 50764-65 (August 21, 2000).  Low GAF scores may relate to factors unrelated to the ability to maintain gainful employment.  "[A] GAF score, without evidence that it impaired the ability to work, does not establish an impairment." *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. May 21, 2008) (citing *Camp v. Barnhart*, 103 Fed.Appx. 352, 354 (10th Cir. 2004)).  Thus, the GAF scores are not necessarily indicative of plaintiff's inability to work.

Furthermore, although the ALJ's decision does not address the GAF scores specifically, the ALJ does conduct an analysis of the medical evidence pertaining to plaintiff's mental impairments.  While it is perhaps unfortunate that the ALJ neglected to mention the GAF scores with specificity in his written decision, the Court is unaware of any precedent establishing this as a requirement.[10]

---

[9]The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000).  A score between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job). *Id.* (emphasis in original).

[10]Plaintiff mentions in a footnote that an unreported case from the United States District Court for the Eastern District of Pennsylvania, *Colon v. Barnhart*, 424 F.Supp.2d 805 (E.D.Pa. 2006), espouses the position that the failure to discuss GAF scores below 50 constitutes reversible error.  In *Colon*, however, the ALJ specifically mentioned the two highest of the plaintiff's twelve GAF scores, but failed to address the lower scores or explain his reason for discounting them. *Id.* at 813-14.  Those facts are not present in this case.  The opinion did not specifically

The failure to mention the scores specifically does not constitute reversible error.  The Court declines plaintiff's invitation to remand solely so the ALJ can insert the GAF scores into his decision.  It is not the function of this Court to critique the stylistic components of ALJ decisions, but only to ensure that the decisions are supported by substantial evidence.  No principle of administrative law "require[s] that we convert judicial review of agency action into a ping-pong game" in search of the perfect decision. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).  The Court finds that the ALJ's analysis of plaintiff's mental impairments is supported by substantial evidence and not unreasonable.

It follows, therefore, that the hypothetical question posed to the VE was likewise not compromised by this omission, as plaintiff argues.  The Court finds that the ALJ incorporated all of plaintiff's credibly established work-related limitations in his hypothetical questioning of the VE.  The Court therefore finds that substantial evidence supports his decision.

## VI.    Conclusion

Plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the administrative decision of the Commissioner will be affirmed.  An appropriate order shall issue of even date herewith.

 s/ Arthur J. Schwab

Arthur J. Schwab
United States District Judge

cc: Karl E. Osterhout, II, Esq.
   1789 S. Braddock Avenue, Suite 570
   Pittsburgh, PA 15218
   *for the plaintiff*

   Jessica Lieber Smolar
   Assistant United States Attorney
   Western District of Pennsylvania
   U.S. Post Office & Courthouse
   700 Grant Street, Suite 4000
   Pittsburgh, PA 15219
   *for the Commissioner*

---

hold, however, as plaintiff would have us believe, that any failure to discuss GAF scores below a threshold level constitutes reversible error. *Id.* at 815.